UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MYLES POWELL, and JASMINE SMITH,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**SETON HALL UNIVERSITY, KEVIN WILLARD, TONY TESTA, DEJA CRAIG, and JOHN OR JANE DOES 1-10**<br><br>**Defendants.** | Civil Action No.:<br>2:21-cv-13709-WJM-JSA<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

This matter arises out of the relationship between Seton Hall University ("Seton Hall" or the "University"), its men's basketball coach, Kevin Willard ("Willard"), its Director of Sports Medicine, Tony Testa ("Testa"), and one of its assistant athletic trainers, Deja Craig ("Craig," and, together with Seton Hall, Willard, and Testa, "Defendants"), and two of the University's former student-athletes, Myles Powell ("Powell") and Jasmine Smith ("Smith," and, together with Powell, "Plaintiffs") in connection with Seton Hall's handling of certain injuries suffered by each of the Plaintiffs in the course of their University-sponsored athletic activities. Before the Court is Defendants' motion (the "Motion") to dismiss the Amended Complaint in its entirety for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 10. For the reasons set forth below, Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**.

I.   **BACKGROUND**

   A.   **Factual Background**[1]

Both Plaintiffs are former student-athletes at Seton Hall. While in high school, Plaintiff Powell was recruited by Seton Hall and signed a national letter of intent ("NLI") to play for the University's men's basketball team. Am. Compl. ¶¶ 19-23, 140. *See generally* NLI, Papalia Cert., Ex. C, ECF No. 10-5 (hereinafter cited as "NLI"). As part of the recruitment process, Powell alleges that Seton Hall represented to him that the University would "provide proper coaching, medical care, training, and oversight of [his] basketball activities." Am. Compl. ¶ 20. Pursuant to the NLI, beginning with his freshmen year in 2016-17, and continuing through his senior year in 2019-20, Powell played for the

---

[1] Unless other stated, the following facts in this section are taken from the Amended Complaint, ECF No. 8, and assumed to be true for purposes of this Opinion.

men's basketball team and received an athletic scholarship covering Powell's tuition costs, room and board, and various other fees and expenses. NLI, at 5. Although Powell could have left Seton Hall in order to enter the National Basketball Association ("NBA") Draft after his junior season, he decided to return to the University for his senior year. Am. Compl. ¶¶ 31-32.

During the second game of Powell's senior season, he suffered what was believed to be an ankle injury and was examined by Willard and Testa. *Id.* at ¶¶ 35-36. Both Willard and Testa determined that the injury was limited to Powell's ankle, and that Powell was not at risk of exacerbating that injury by continuing to play basketball for the team. *Id.* at ¶ 37. Several games later, on December 14, 2019, Powell was again injured during a game – this time suffering a concussion that would cause him to miss the University's next two contests. *Id.* at ¶ 41.

At some point during the season, Powell began experiencing consistent pain in his right knee. *Id.* at ¶ 43. Upon reporting his knee pain, Powell was advised by Testa that he had a bone bruise, received regular knee injections to alleviate the pain, and had his practice time limited. *Id.* at ¶¶ 44-45. Powell was also informed that continuing to play through his knee pain would not risk exacerbating the injury. *Id.* at ¶ 44. Though unclear how or when, it was ultimately discovered that Powell suffered from an undiagnosed lateral meniscus tear in his right knee rather than, or in addition to, the reported bone bruise, which Powell alleges, had it been properly diagnosed, would have required sitting out the remainder of the basketball season in order to properly recover.[2] *Id.* at ¶¶ 49-50. Powell further alleges that, as a result of this undiagnosed injury which was "suspected or discovered" by professional basketball teams, he went from being "guaranteed" to be one of the first selections in the NBA Draft to going undrafted. *Id.* at ¶¶ 52-53.

Unlike Powell, Plaintiff Smith began her collegiate basketball career at the University of New Mexico and Trinity Valley Community College for her freshman and sophomore years, respectively, before being recruited to play for Seton Hall's women's basketball team for her junior and senior seasons. *Id.* at ¶¶ 56-57. Like Powell, however, she alleges that the University represented that, if she chose to play basketball for the school, it would provide her with "proper coaching, medical care, training, and oversight of [her] basketball activities." *Id.* at ¶ 59. Based on those representations, Smith transferred to Seton Hall for the 2019-20 basketball season in exchange for an athletic scholarship. *Id.* at ¶ 61.

Prior to her senior season, Smith underwent a physical evaluation which revealed no injuries, and she was cleared to participate in full basketball activities with the team. *Id.* at ¶¶ 65-66. During an October 27, 2020 school-sanctioned basketball practice, Smith sustained an injury to her left knee and was left unable to walk. *Id.* at ¶ 67. Seton Hall

---

[2] There are no allegations in the Amended Complaint describing precisely when Powell began experiencing knee pain, when he first reported that knee pain, or how or when the extent of his knee injury was diagnosed.

referred Smith to a physician who provided medical assistance, including two MRIs. Smith also began receiving physical therapy. *Id.* at ¶ 70. Following her MRIs, Craig, an assistant athletic trainer who worked directly with the women's basketball team and was supervised by Testa, informed her that the medical reports revealed a bone bruise that would heal on its own. *Id.* at ¶ 73. Smith alleges that she never spoke with a doctor or other medical professional about her injury, test results, or treatment options. *Id.* at ¶ 75. Nonetheless, after receiving this bone bruise diagnosis, Smith stopped attending physical therapy and subsequently rejoined the basketball team for limited participation on November 9, 2020. *Id.* at ¶¶ 74, 76. Two days later, Smith was cleared for full participation in basketball activities. *Id.* at ¶ 77.

Upon resuming participation in basketball activities, Smith's knee would swell and cause her pain after workouts, practices, and games. *Id.* at ¶ 79. Smith was told that swelling was normal, was instructed to ice her knee and take ibuprofen to manage these symptoms, and continued to play basketball for the University's women's team. *Id.* at ¶ 81-84. At the conclusion of the basketball season, on March 17, 2021, Smith had an exit physical with Craig during which she registered further complaints about her knee discomfort. *Id.* at ¶¶ 85-86. Craig reiterated that Smith had suffered a bone bruise and that nothing could be done to accelerate her recovery. *Id.* at ¶ 87.

After graduating from Seton Hall, Smith had one year of college basketball eligibility remaining, and registered with Loyola Marymount for the 2021-22 season on an athletic scholarship. *Id.* at ¶¶ 88-89. During an entrance physical with Loyola Marymount on June 14, 2021, Smith complained about her bone bruise and her continued swelling and pain in her left knee. *Id.* at ¶ 90. Loyola Marymount, in turn, would not clear Smith to participate in basketball activities until she consulted with an orthopedist, and on, June 21, 2021, arranged for Smith to have an MRI on her knee. *Id.* at ¶¶ 91, 94. On June 23, 2021, Smith reviewed the MRI results with her orthopedist, who diagnosed her with a chondral defect. *Id.* at ¶¶ 95-96. Plaintiff alleges that the MRI images taken on June 21, 2021 were "essentially" the same as those taken during Smith's time at Seton Hall, and that the orthopedist informed Smith that Seton Hall "should have identified the extent of the problem with her knee and should not have released her to continue in workouts, practices, or games." *Id.* at ¶¶ 97-99. On August 5, 2021, Smith underwent surgery to repair her knee and with the hope of avoiding additional damage thereto.[3] *Id.* at ¶¶ 100-04. As a result of this surgery, Smith has been unable to participate in some or all of her final collegiate basketball season, and further alleges that she has lost the opportunity to play professional basketball in Europe upon the conclusion of her collegiate career. *Id.* at ¶¶ 107-08.

---

[3] Smith also alleges that the first procedure was insufficient to fully repair her knee, and that a second surgery would be necessary but had not yet been performed as of the date of the Amended Complaint. Am. Compl. ¶¶ 105-06. It is unclear if Smith has had that second surgery.

### B. Procedural History

Powell initiated this action on July 14, 2021 by filing a four-count Complaint against Seton Hall, Willard, and Testa in the Superior Court of New Jersey, Law Division, Essex County asserting negligence and breach of fiduciary duty claims against all three Defendants, as well as a breach of contract claim against Seton Hall. *See generally* Complaint, Notice of Removal Ex. A., ECF No. 1. Defendants timely removed the action to this Court on the basis of its diversity jurisdiction.

Following Defendants' motion to dismiss the initial Complaint, Powell filed the Amended Complaint. The Amended Complaint added Smith as a Plaintiff, Craig as a Defendant, and asserted a total of thirteen (13) counts. Of these thirteen counts, five are for gross negligence against each of the Defendants (Counts 1, 2, and 3 by Powell against Testa, Willard and Seton Hall, respectively; Counts 8 and 9 by Smith against Craig and Testa, and Seton Hall, respectively), two are for fraudulent concealment against all of the Defendants (Count 4 by Powell; Count 10 by Smith), two are for breach of fiduciary duty against all of the Defendants (Count 5 by Powell against Seton Hall, Willard, and Testa; Count 11 by Smith against Seton Hall, Craig, and Testa), two are for breach of contract against Seton Hall (Count 6 by Powell; Count 12 by Smith), and, finally, two are for breach of implied contract against Seton Hall (Count 7 by Powell; Count 13 by Smith). Defendants have now moved to dismiss the Amended Complaint in its entirety.

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") provides for the dismissal of a complaint if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The movant bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under FRCP 12(b)(6), "all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The Court need not accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a 12(b)(6) motion, the Court is ordinarily limited to the facts as alleged in the complaint, the exhibits attached thereto, and matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1996 (3d Cir. 1993). The Court may, however, look outside the pleadings and also consider "document[s] integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Asbestos Prod. Liability Litig. (No. VI)*, 822 F.3d 125, 134 n.7 (3d Cir. 2016).

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### III. DISCUSSION

Defendants have moved to dismiss each of the Counts asserted in the Amended Complaint. The Court will address each claim in turn.

#### A. Gross Negligence – Counts 1, 2, 3, 8, and 9

The central question with respect to each of Plaintiffs' five counts for gross negligence is whether the allegations in the Amended Complaint, assumed to be true, would satisfy the higher standard needed to state a claim of gross negligence or whether such allegations sound merely in simple negligence. If Plaintiffs' allegations sound in simple negligence, Defendants would be entitled to immunity with respect to these claims under the New Jersey Charitable Immunity Act, N.J.S.A. § 2A:53A-7(a) (the "NJCIA").[4]

The essential elements to state a claim for negligence and gross negligence are identical: (1) the existence of a duty owed by Defendants towards Plaintiffs; (2) a breach of that duty by Defendants; (3) that Defendants' breach caused Plaintiffs' injuries; and (4) that Plaintiffs suffered damages as a result. *Sines v. Darling Ingredients Inc.*, Civil Action No. 19-19121 (CCC), 2020 WL 5015488, at *5 (D.N.J. Aug. 25, 2020). The difference between gross negligence and simple negligence is one of degree and not the quality of proof. *Mills v. Byck*, Civil Action No. 19-14349 (JMV) (MF), 2019 WL 3347169, at *6 (D.N.J. July 24, 2019). To that end, "[w]hereas negligence is the failure to exercise ordinary or reasonable care that leads to a natural and probable injury, gross negligence is the failure to exercise slight care or diligence." *Steinberg v. Sahara Sam's Oasis, LLC*, 226 N.J. 344, 364, 142 A.3d 742 (2016) (quotations omitted). Although courts have offered varying definitions concerning the sort of conduct that might be properly classified as "grossly negligent" as opposed to "simply negligent," the New Jersey Supreme Court has

---

[4] The NJCIA provides, in relevant, part:

> No nonprofit corporation . . . organized exclusively for . . . education purposes or its trustees, directors, officers, employees, agents, servants or volunteers shall, except as is hereinafter set forth, be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant or such corporation, society, or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation. . . .

N.J.S.A. § 2A:53A-7. Here, there is no dispute that (1) Seton Hall is an nonprofit institution organized exclusively for educational purposes; (2) Willard, Testa, and Craig are employees or agents of Seton Hall; (3) Powell and Smith were student-athletes receiving an education from, and thus beneficiaries of, Seton Hall; and (4) Powell and Smith allegedly suffered their injuries in the pursuit of activities organized and sanctioned by Seton Hall in the performance of its educational or charitable objectives.

fairly recently clarified that under New Jersey law "gross negligence is an indifference to another by failing to exercise even scant care or by thoughtless disregard of the consequences that may follow from an act or omission." *Id.* at 364-65. While this standard requires "something more than inattention or mistaken judgment, it does not require willful or wanton misconduct or recklessness." *Id.* at 364.

Here, with respect to Powell's claims for gross negligence, the Court finds that Powell has not plausibly alleged a gross negligence claim against Defendants. The Court notes at the outset that the substantive allegations in the Amended Complaint relating to Powell's gross negligence claims are nearly identical to those made in the initial Complaint for simple negligence. *Compare* Am. Compl. ¶¶ 35-53, 112-129 *with* Compl., Notice of Removal Ex. A, at ¶¶ 16-41. It is obvious, however, that "merely using phrases such as 'gross negligence' does not mean the factual allegations support such a claim." *Doe v. Princeton Univ.*, Case No. 3:19-CV-07853-BRM-TJB, 2020 WL 7383192, at *7 (D.N.J. Dec. 16, 2020) ("*Doe I*"). Rather, the Court must independently consider all of Powell's allegations and determine whether those allegations, if true, could rise to the level of gross negligence. The Court finds that they could not.

In identifying Defendants' allegedly grossly negligent conduct, Powell points to his allegation that Willard, Testa, and Seton Hall each knew that he had suffered a lateral meniscus tear in his right knee in addition to his ankle injury and his concussion, but withheld that information from him so that he would continue to play for the basketball team. This conclusory allegation, however, is insufficient to state a plausible claim without additional factual allegations that would support an inference that these Defendants could have possessed such knowledge. *See Aylward v. Wal-Mart Stores, Inc.*, Civil Action No. 10-4799, 2011 WL 2357762, at *8 (D.N.J. Jun 9, 2011) (finding allegations that employer knew or should have known that employee was exhausted or fatigued from work without supporting factual basis insufficient to state a plausible claim); *In re Schering-Plough ERISA Litig.*, No. CIV A 08CV1432 (DMC), 2009 WL 2762685, at *2 (D.N.J. Sept. 1, 2009); *cf. Blackshear v. Syngenta Crop Prot., Inc.*, Civ. Action No. 10-3585 (KSH), 2011 WL 5238801, at *4 (D.N.J. Oct. 31, 2011) (accepting allegation that defendant knew and concealed hazardous nature of chemicals because defendant was an exterminating company and it was a plausible inference that defendant knew risks inherent in daily exposure to such chemicals it used in ordinary course). There are no allegations, for example, regarding how or when Powell injured his knee, or what, if any, tests Defendants employed to examine his knee (or any of his other injuries, for that matter). Indeed, Powell alleges that, after returning from his ankle injury and unrelated concussion, he "continued to feel pain in his right knee," without any allegations that, prior to that point, he had ever felt or reported feeling knee discomfort. Am. Compl. at ¶ 43. To the extent Powell intends to allege that he suffered his knee injury at the same time as his apparent ankle injury, or that his ankle injury was, in fact, a knee injury all along, there are no allegations to that effect and no allegations that would tend to explain how any of the Defendants could have actually known the extent of his injuries.

At most, Powell alleges that, upon reporting continued knee pain, Defendants failed to properly examine, diagnose, or treat that injury. Such a theory sounds in simple, not gross, negligence and would be barred by the NJCIA. Accordingly, Defendants' Motion to dismiss Powell's claims for gross negligence in Counts 1, 2, and 3 is **GRANTED**. Counts 1, 2, and 3 of the Amended Complaint are therefore **DISMISSED WITHOUT PREJUDICE**.

The Court reaches a different result with respect to Plaintiff Smith's gross negligence claims. Unlike Powell, Smith alleges enough facts that, if true, could plausibly demonstrate the failure to exercise the slightest care or diligence in the treatment of her injury. For example, Smith alleges that she (1) suffered a significant knee injury during practice which left her unable to walk without assistance, (2) received multiple MRIs related to that injury, (3) never consulted with a doctor or other medical professional regarding the results of those MRIs or any other medical evaluations while at Seton Hall, (4) was told by an athletic trainer that she had suffered a simple bone bruise, (5) experienced, and reported experiencing, continued pain and swelling in her knee for months after this initial injury and diagnosis, and (6) that the University continued to recommend the same ineffective treatment. Beyond these basic allegations, Smith further alleges that it was not until she attempted to play for Loyola Marymount's basketball team, and was instructed to receive another MRI and consult an orthopedist, that she discovered the true extent of her injury, which should have been apparent to Seton Hall based on Smith's continued symptoms and the results of her previous MRIs. Such allegations are sufficiently detailed to state a plausible gross negligence claim against Craig, Testa, and Seton Hall.

Accordingly, Defendants' Motion to dismiss Smith's claims for gross negligence in Counts 8, and 9 of the Amended Complaint is **DENIED**.

### B.     Fraudulent Concealment – Counts 4 and 10

Both Powell and Smith allege that Defendants fraudulently concealed the true nature and extent of their respective knee injuries. In order to state a claim for the tort of fraudulent concealment under New Jersey law, a plaintiff must sufficiently allege: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) a reasonable reliance thereon by the other person; and (5) resulting damages." *Argabright v. Rheem Mfg. Co.*, 250 F. Supp. 3d 470, 488-89 (D.N.J. 2017) (quotations omitted). In the context of a fraudulent concealment claim, "[t]he deliberate suppression of a material fact that should be disclosed is viewed as equivalent to a material misrepresentation." *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 305 (D.N.J. 2009). However, "New Jersey courts will not imply a duty to disclose in a case alleging fraudulent concealment," and whether such a duty exists is a matter of law to be determined by the Court. *Id.*

Beyond the basic elements needed to establish a fraudulent concealment claim, plaintiffs asserting such claims must satisfy the heightened pleading requirements of FRCP 9(b). *Weske v. Samsung Elecs. Am., Inc.*, Civ. No. 2:10-4811 (WJM), 2012 WL 833003, at

*5 (D.N.J. Mar. 12, 2012) ("*Weske I*"). "Rule 9(b) essentially requires [p]laintiffs to allege the who, what, when, where, and how elements to state a claim arising in fraud." *Weske v. Samsung Elecs., Am., Inc.*, 934 F. Supp. 2d 698, 703 (D.N.J. 2013) ("*Weske II*"). Where plaintiffs are able to demonstrate that specific information is in the exclusive control of a defendant or defendants, the requirements of Rule 9(b) are relaxed. *In re Craftmatic Secs. Litig.*, 890 F.2d 628, 645 (3d Cir. 1989). Notwithstanding the relaxation of Rule 9(b)'s requirements, however, plaintiffs "must still allege facts suggesting fraudulent concealment." *Weske I*, 2012 WL 833003, at *5.

Here, the Court finds that both Plaintiffs have failed to state claims for fraudulent concealment against any of the Defendants. First, with respect to Powell's claim for fraudulent concealment reflected in Count 4 of the Amended Complaint, the Court finds that Powell has failed to sufficiently allege that either Willard, Testa, or Seton Hall knew, but intentionally failed to disclose, that he had suffered a lateral meniscus tear in his right knee. To the extent Powell argues that the exact details of Willard, Testa, or Seton Hall's knowledge is a matter within their exclusive control, such an allegation is entirely missing in the Amended Complaint and is unaccompanied by any supporting factual allegations that would explain how these Defendants exclusively control access to that information. *See In re Craftmatic Secs. Litig.*, 890 F.2d at 645. Regardless, even assuming the relaxation of Rule 9(b)'s particularity requirement is warranted here, Powell has nonetheless failed to allege facts that suggest fraudulent concealment. As the Court has already noted with respect to his gross negligence claims, though Powell conclusory alleges that each of these Defendants knew the true extent of his knee injury, there are no supporting factual allegations which would tend to establish such knowledge. *Weske I*, 2012 WL 833003, at *5. Accordingly, Defendants' Motion to dismiss Count 4 of the Amended Complaint is **GRANTED**. Count 4 of the Amended Complaint is **DISMISSED WITHOUT PREJUDICE**.

The Court reaches a similar result with respect to Smith's claim for fraudulent concealment reflected in Count 10 of the Amended Complaint against Defendants Craig, Testa, and Seton Hall. Unlike Powell, Smith never actually alleges, or attempts to allege, actual knowledge by any of these Defendants of the full extent of her knee injury. As noted, Smith alleges that she received two MRIs after injuring her knee, that Craig informed her that the medical reports showed only a bone bruise, and that subsequent MRIs and consultations with an orthopedist revealed both the extent of her knee injury and that Craig, Testa, and Seton Hall should have been aware thereof. While these allegations are sufficient to establish a gross negligence claim, they fall short of plausibly alleging the requisite knowledge of these Defendants to sustain a fraudulent concealment claim. Accordingly, Defendants' Motion to dismiss Count 10 of the Amended Complaint is **GRANTED** and Count 10 is **DISMISSED WITHOUT PREJUDICE**.

### C.     Breach of Fiduciary Duty – Counts 5 and 11

Plaintiffs also each assert breach of fiduciary duty claims against Defendants, arguing that, as student-athletes, they were in a special relationship with Defendants,

trusted and relied on Defendants to properly inform them about the extent of their injuries and to provide adequate medical care and advice with respect thereto, and that Defendants breached or exploited that trust and reliance. The Court disagrees.

Plaintiffs have not cited, and the Court has been unable to find, any case decided by either the New Jersey Supreme Court or any lower courts of that state which have held that there exists a fiduciary relationship between a university or coach and a student-athlete. "[I]t is not the role of a federal court to expand state law in ways not foreshadowed by state precedent." *City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 421 (3d Cir. 2002). On this point, the cases relied on by Plaintiffs in support of their contention that such a fiduciary relationship exists are inapposite. For example, in *Kleinknecht v. Gettysburg College*, 989 F.2d 1360 (3d Cir. 1993), a case arising under Pennsylvania law, the Third Circuit predicted that the Supreme Court of Pennsylvania would find that a college owed a student-athlete a duty of reasonable care with respect to the student-athlete's participation in a "school-sponsored intercollegiate athletic activity for which he had been recruited" based on the nature of the relationship between the college and the student-athlete, the foreseeability of the risk of serious injury or death as a result of participation therein, and public policy concerns. *Id.* at 1366-72. Although the Third Circuit noted the existence of a special relationship between a school and its coach and trainers on one hand, and a student-athlete on the other, it never described the duty arising from that relationship as that of a fiduciary. *Id.* at 1366-68. Rather, the Third Circuit spoke in terms of an ordinary duty of care sounding in negligence, and, indeed, contrasted the facts of that case to others which involved injuries a student suffered while pursuing private interests for which no duty of care was found to exist at all. *Id.* at 1368; *see also, e.g.*, *Corcoran v. High Point Regional School Dist.*, A-1798-13T3, 2014 WL 7496990, at *5 (N.J. Super. Ct. App. Div. Jan. 9, 2015) (noting that high schools owed duty of reasonable care to student-athletes entrusted to them).

The New Jersey state court cases cited by Plaintiffs are similarly unpersuasive. The Appellate Division's opinion in *Rosania v. Carmona*, 706 A.2d 191 (N.J. Super. Ct. App. Div. 1998) concerned the existence of a duty and applicable standard of care owed by a karate instructor and business owner towards his student with respect to an injury suffered by the student during a sparring match which may have violated the business's own sparring rules of engagement that prohibited targeting a participant's head. *Id.* at 195-96. The central issue in *Rosania* was whether, by violating his own rules regarding acceptable targets in a sparring match, the karate instructor breached a duty owed to his student and sparring partner. The court found that karate instructors in a commercial setting had a duty to "communicate unambiguously the applicable rules of engagement and . . . to avoid negligently violating the rules so communicated." *Id.* at 196. Nowhere in *Rosania* did the Appellate Division imply the existence of a broad fiduciary relationship between coach and athlete that would have any bearing on the facts of this case.

The New Jersey Supreme Court's decision in *F.G. v. MacDonell*, 150 N.J. 550, 696 A.2d 697 (1997) is also unhelpful. *MacDonell* concerned the liability of a pastor arising out of sexual misconduct with a vulnerable parishioner who had sought counseling from

9

that pastor. *Id.* at 564-65. Though the New Jersey Supreme Court in *MacDonell* recognized a fiduciary relationship between a pastoral counselor and a parishioner, nothing in the Supreme Court's opinion suggests the existence, or supports the creation, of a fiduciary relationship between a university, its coaches or its trainers and a student-athlete.

Indeed, though not necessary to resolve Defendants' Motion, these cases suggest an additional problem with Plaintiffs' breach of fiduciary duty claims: it is unclear what differentiates their fiduciary duty claims from their gross negligence claims. The same alleged conduct that gives rise to each of the Plaintiffs' respective gross negligence claims appears to form the basis for each Plaintiff's respective breach of fiduciary duty claim. The injuries each Plaintiff has suffered for these alleged breaches of fiduciary duty are identical to the injuries suffered as a result of Defendants' alleged gross negligence. In other words, Plaintiffs' breach of fiduciary duty claims appear duplicative of each of their respective gross negligence claims. *See Lopez-Siguenza v. Roddy*, Civil No. 13-2005 (JBS/JS), 2014 WL 4854452, at *6 (D.N.J. Sept. 30. 2014) (finding breach of fiduciary duty claim against attorney duplicative of legal malpractice claim where plaintiff "failed to plead misconduct by [defendant] as a fiduciary beyond the negligent acts encompassed in [p]laintiff's legal malpractice claim"); *cf. Fink v. Kirchner*, Civil Action No. 12-4125 (NLH) (KMW), 2013 WL 1952303, at *3 (D.N.J. May 8, 2013) (finding plaintiff pleaded separate claims for legal malpractice, fraud, and breach of fiduciary duty where there were separate allegations that defendant attorneys both deviated from standard of professional care and also intentionally sought to defraud plaintiff and engage in protracted, unnecessary litigation to increase fees).

Accordingly, Defendants' Motion to dismiss Plaintiffs' claims for breach of fiduciary duty in Counts 5 and 11 of the Amended Complaint is **GRANTED** and Counts 5 and 11 are **DISMISSED WITH PREJUDICE**.

### D. Breach of Contract – Counts 6 and 12

Plaintiffs each assert claims for breach of contract against the University. Specifically, Powell alleges that the NLI and other, unspecified communications between himself and Seton Hall constituted a binding contract which the University breached by mishandling his knee injury. Am. Compl. ¶ 140. Similarly, Smith alleges that certain, unspecified communications between herself and Seton Hall constituted a binding contract which the University also breached through its mishandling of her own knee injuries. *Id.* at ¶ 173. The Court disagrees and finds that neither Plaintiff has stated a plausible breach of contract claim against the University.

#### 1. Applicable Standard

A threshold issue in this case which was largely unaddressed by the parties is what standard the Court ought to apply in evaluating Plaintiffs' contract claims. Generally speaking, to state a claim for breach of contract, a plaintiff must allege: (1) the existence of a valid contract between the parties; (2) plaintiff's performance of their own obligations under that contract; (3) defective or deficient performance under the contract by a

defendant; and (4) damages resulting from defendant's breach. *Goldfarb v. Solimine*, 245 N.J. 326, 338, 245 A.3d 570 (2021); *see also Tracey v. Recovco Mortg. Mgmt. LLC*, 451 F. Supp. 3d 337, 342 (D.N.J. 2020). In addition, in order to survive dismissal, a plaintiff asserting a breach of contract claim "must identify the specific contract or provision that was allegedly breached." *Barker v. Our Lady of Mount Carmel School*, Civil Action No. 12-4308, 2016 WL 4571388, at *15 (D.N.J. Sept. 1, 2016) (citing *Skypala Mortg. Elec. Registration Sys., Inc.*, 655 F. Supp. 2d 451, 459 (D.N.J. 2009)). This inquiry is ordinarily straightforward: "[t]he Court determines what obligations the parties owed each other, often by interpreting the express contract, and decides if one party failed to do what it promised." *Dougherty v. Drew Univ.*, 534 F. Supp. 3d 363, 373 (D.N.J. 2021). However, "New Jersey courts repeatedly refuse to apply strict contractual principles to conflicts between a university and its students." *Doe v. Princeton Univ.*, No. 3:20-cv-4352, 2021 WL 194806, at *7 (D.N.J. Jan. 20, 2021) ("*Doe II*"). Rather, these courts have recognized that the relationship between a university and its students often times cannot be classified as purely contractual and that some deference towards a university's decisions is warranted. *See Doe v. Princeton Univ.*, 790 F. App'x 379, 385 (3d Cir. 2019).

    To that end, the standard applicable to a breach of contract-type dispute between a student, or former student, and a university depends on the context. *Dougherty*, 534 F. Supp. 3d at 374. Where a case involves academic dismissal, student misconduct, or the application of policies in a student manual, courts have typically limited their review of university action to a consideration of whether (1) the university substantially departed from its own rules and regulations, (2) the procedures employed by the university were fundamentally fair, and (3) the university's decisions were supported by sufficient evidence. *See Keles v. Bender*, No. Civil No. 17-1299 (ES) (JAD), 2021 WL 568105, at *4 (D.N.J. Feb. 16, 2021); *see also Dougherty*, 534 F. Supp. 3d at 374 (noting contexts in which courts have applied "substantial departure" standard of review of university action). In addition to this standard, state and federal courts in New Jersey have also applied a quasi-contract standard to issues concerning broad administrative or business decisions made by a university, such as the closure of a college or program or the decision to institute remote learning during the COVID-19 pandemic, asking whether the university's decision "was arbitrary, made in bad faith, or lacking in fair notice." *Dougherty*, 534 F. Supp. 3d at 375-76; *see also Fittipaldi v. Monmouth Univ.*, Civil Action No. 20-05526 (MAS) (ZNQ), 2021 WL 2210740, at *8-9 (D.N.J. June 1, 2021); *Beukas v. Bd. of Trs. of Fairleigh Dickinson Univ.*, 605 A.2d 776, 783-84 (N.J. Super. Ct. Law Div. 1991). Finally, notwithstanding the development of these unique contract and quasi-contract standards and courts' reluctance to apply strict contractual principles to such disputes, there is no indication that New Jersey courts have entirely rejected reliance on ordinary contract principles in every case, and such principles may govern a student's breach of contract claim against a university in an appropriate context. *See Dougherty*, 534 F. Supp. 3d at 382-83 (applying ordinary contract principles to claims to recover certain fees and expenses for services not provided by university); *Cf. Beukas*, 605 A.2d at 782 (noting that

prior case law "did not expressly reject . . . the classic contract model as the theoretical framework for resolving university-student disputes *in every case*" (emphasis added)).

The Court is therefore left with three options: the ordinary contract standard; the "substantial departure" standard; or the quasi-contract "*Beukas*" standard. None of the available cases concern the unique relationship between a university and student-athlete in the context of intercollegiate athletic activities. However, it seems obvious that this case does not raise the sort of administrative or business decisions to which the quasi-contract *Beukas* standard would apply. As between the remaining two options, as discussed below, the appropriate standard depends on the precise nature of each Plaintiff's claim.

### 2. Powell's Breach of Contract Claim – Count 6

As noted, Powell's breach of contract claim is premised on the NLI and other, unspecified communications between himself and Seton Hall. Unlike the breach of contract disputes between students and universities concerning the university's generally applicable rules, regulations, or procedures, Powell's contract claim relates to a specific contract between himself and Seton Hall, as well as representations or communications from Seton Hall to him specifically. As such, the Court will apply principles of ordinary contract law in analyzing his claim.

Powell alleges that the NLI, together with these other, unknown communications, imposed certain obligations on the University, including duties to protect his physical and educational well-being, provide him with a safe environment, properly inform him of the nature and extent his injuries, and to refrain from damaging his professional opportunities. Am. Compl. ¶ 140. However, Powell neither identifies any provision of the NLI that the University allegedly breached nor any other specific communication or representation from the University that would support the imposition of these contractual duties. *See Barker*, 2016 WL 4571388, at *15. Indeed, the NLI, which was explicitly referenced in the Amended Complaint and attached to Defendants' Motion, nowhere mentions these obligations on the part of the University.

In opposing Defendants' Motion to dismiss his breach of contract claim, Powell asserts two arguments, both to no avail. First, Powell claims that the NLI incorporates by reference certain "admissions, academic, and athletic regulations," which, along with other communications made to Powell by Seton Hall, are in the University's exclusive possession and can only be revealed through discovery. Pl. Opp'n at 23-24. However, the specific provision Powell references – in opposition, not in the Amended Complaint – simply provides that the renewal of Powell's athletic scholarship given in exchange for signing the NLI is conditioned on, among other things, Powell's continued compliance with certain University rules and standards. *See* NLI at 5. The NLI simply does not incorporate any additional rules, regulations, or standards as contractual obligations of the University giving rise to the duties alleged by Powell. Moreover, to the extent Powell argues that "other communications" form the basis of his breach of contract claim, he must identify those specific communications or plausibly allege why those communications are

solely in the University's possession. Because he has failed to do either, Powell cannot rely on these vague references to "other communications" to survive Defendants' Motion.

Second, Powell, appearing to rely on the "substantial departure" standard, suggests that Seton Hall breached a general express contract it has with all of its students, reflected in various policies such as the list of patient rights and responsibilities on the University's health services website or its mission statement. Putting aside the question of whether these statements or policies could support a breach of contract claim under any standard, the Amended Complaint is entirely devoid of any references thereto. "It is one thing to set forth theories in a brief; it is quite another to make proper allegations in a complaint." *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). To that end, in order to properly state this sort of "substantial departure from policy" breach of contract claim, Powell was required to "identify a specific policy that the [U]niversity breached and allege how the [U]niversity breached it in a substantial way that exceeds the wide bounds of discretion afforded to universities." *Keles*, 2021 WL 568105, at *4. This Powell failed to do, and, to the extent he seeks to correct this deficiency in his opposition brief, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007).

Accordingly, Defendants' Motion to dismiss Powell's breach of contract claim as alleged in Count 6 of the Amended Complaint is **GRANTED** and Count 6 is **DISMISSED WITH PREJUDICE**.

### 3. Smith's Breach of Contract Claim – Count 12

Though Smith does not allege the existence of an NLI or other written instrument, she, like Powell, claims that certain, unspecified communications between herself and Seton Hall established a binding contract under which the University was obligated to protect her well-being, provide a safe environment, and inform her of the extent of her injuries. As with Powell's breach of contract claim, however, Smith's allegations are insufficient to state a plausible breach of contract claim against the University. Like Powell, she neither specifies which communications between herself and the University created a contract between them nor why such communications remain in the exclusive possession of the University. Similarly, to the extent Smith seeks to rely on University policies or statements, there are no allegations with respect thereto in the Amended Complaint, and she cannot further amend the Amended Complaint through an opposition brief.

Accordingly, Defendants' Motion to dismiss Smith's breach of contract claim reflected in Count 12 of the Amended Complaint is **GRANTED** and Count 12 is **DISMISSED WITH PREJUDICE**.

### E.  Breach of Implied Contract – Counts 7 and 13

Finally, each of the Plaintiffs asserts a breach of an implied-in-fact contract against the University. The elements of an implied-in-fact contract, as well as the elements to state a claim for a breach thereof, are the same as for express contracts – that is, to prove the existence of an implied contract, Plaintiffs must demonstrate mutual assent, consideration,

legality of object, and legal capacity of the parties. *Duffy v. Charles Schwab & Co.*, 123 F. Supp. 2d 802, 818 (D.N.J. 2000). The difference, however, between an implied and an express contract is that proof of an implied contract is inferred from the conduct of the parties rather than any verbal or written expression. *See Fittipaldi*, 2021 WL 2210740, at *4 (quotations omitted).

Here, both Plaintiffs assert essentially identical allegations with respect to their breach of implied contract claims. Generally speaking, they allege that, among other things, "[u]nder an implied contract, Seton Hall agreed to generally protect [Plaintiffs'] physical and education [sic] well-being and provide a safe environment." Am. Compl. ¶¶ 145, 178. However, as with their breach of contract claims, Plaintiffs do not allege what sort of conduct, set of policies, or other forms of action the University undertook that would give rise to such broad contractual duties. Accordingly, for much the same reasons, the Court finds Plaintiffs have failed to state plausible breach of implied contract claims.

To the extent Plaintiffs argue that the University undertook these duties simply by recruiting student-athletes and administering athletic programs, there are at least two additional, related, problems with their claims. First, and most obviously, is that Plaintiffs fail to identify any New Jersey cases recognizing the existence of an implied contract claim in this context. Second, this sort of claim sounds more like a negligence claim based on the relationship between a university and its student-athletes in the performance of sanctioned athletic activities, which the Court has already addressed, than it does any sort of contract claim. As such, the Court declines to find that an implied contract naturally arises between a university and its student-athletes in such a context.

For these reasons, Defendants' Motion to dismiss Plaintiffs' breach of implied contract claims as alleged in Counts 7 and 13 of the Amended Complaint are **GRANTED** and Counts 7 and 13 are **DISMISSED WITH PREJUDICE**.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to dismiss the Amended Complaint is **GRANTED IN PART** and **DENIED IN PART**. An appropriate order follows.

*/s/ William J. Martini*
**William J. Martini, U.S.D.J.**

**Date: April 26, 2022**