UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MYLES POWELL, and JASMINE SMITH,<br><br>    Plaintiffs,<br><br>    v.<br><br>SETON HALL UNIVERSITY, KEVIN WILLARD, TONY TESTA, DEJA CRAIG, and JOHN OR JANE DOES 1-10<br><br>    Defendants. | Civil Action No.:<br>2:21-cv-13709-WJM-JSA<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

  This matter arises out of the relationship between Seton Hall University ("Seton Hall" or the "University"), its men's basketball coach, Kevin Willard ("Willard"), one of its assistant athletic trainers, Deja Craig ("Craig"), its Director of Sports Medicine, Tony Testa ("Testa" and, together with Seton Hall and Willard, "Defendants"), and two of the University's former student-athletes, Myles Powell ("Powell") and Jasmine Smith ("Smith," and, together with Powell, "Plaintiffs") in connection with Seton Hall's handling of certain injuries suffered by each of the Plaintiffs in the course of their University-sponsored athletic activities. Before the Court is Defendants' motion (the "Motion") to dismiss Counts 1-3 in the Second Amended Complaint ("SAC") for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 19. For the reasons set forth below, Defendants' Motion is **DENIED**.

**I. BACKGROUND**

  **A. Factual Background[1]**

  Powell is a former student-athlete at Seton Hall. While in high school, Powell was recruited by Seton Hall to play for the University's men's basketball team. SAC ¶¶ 17-21. As part of the recruitment process, Powell alleges that Seton Hall represented to him that the University would "provide proper coaching, medical care, training, and oversight of [his] basketball activities." *Id.* at ¶ 20. Beginning with his freshmen year in 2016-17, and continuing through his senior year in 2019-20, Powell played for the men's basketball team and received an athletic scholarship. *Id.* at ¶¶ 22-23, 33. Although Powell could have left Seton Hall and entered the National Basketball Association ("NBA") Draft after his junior season, he decided to return to the University for his senior year. *Id.* at ¶¶ 31-32. Prior to

---

[1] Unless otherwise stated, the following facts in this section are taken from the Second Amended Complaint, ECF No. 16, and assumed to be true for purposes of this Opinion. Only Powell's claims will be discussed as Defendants have not moved to dismiss Smith's claims.

the beginning of Powell's senior season, he had no relevant ankle, knee, or leg injury. *Id.* at ¶ 35. During a game against Stony Brook University on November 9, 2019, Powell suffered what was believed to be an ankle injury and was examined by Willard and Testa. *Id.* at ¶¶ 36-38. Both Willard and Testa determined that the injury was limited to Powell's ankle, and that Powell was not at risk of exacerbating that injury by continuing to play basketball for the team. *Id.* at ¶¶ 39, 42. Powell played in the next game on November 14, 2019 and was still in pain from his ankle injury. *Id.* at ¶¶ 42-43.

In mid-December 2019, Powell began experiencing pain in his right knee. *Id.* at ¶ 46. Upon reporting his knee pain, Testa physically examined Powell. *Id.* ¶¶ 47, 49. Powell alleges that, before games, Testa would inject Powell with an unknown substance and also provide him with unknown pills to mask the pain. *Id.* at ¶¶ 50-51, 57. Willard was also allegedly aware of the injection provided to Powell. *Id.* at ¶ 50. As a result of the pain medication, Powell was able to withstand his knee pain and play through the rest of the winter of 2019-2020. *Id.* at ¶¶ 53-54. Powell alleges that whenever he would ask Testa about his knee pain, Testa would advise it was just a bone bruise and that playing on it would not exacerbate the injury. *Id.* at ¶ 56. On January 6, 2020, Testa conducted another physical examination of Powell whereby Powell laid on his back while Testa attempted to move Powell's knee to his chest and his knee laterally. *Id.* at ¶¶ 61-62. The pain was so intense that Powell could not complete the movement and Testa then provided Powell with an injection and pills both on January 6, 2020, and two days later, on January 8, 2020, just before another game. *Id.* at ¶¶ 63-64. Testa again allegedly injected Powell and provided him pills before a January 15 and January 18 game. *Id.* at ¶¶ 65, 68.

Powell newly alleges in the SAC that on January 13, 2020[2], Testa mistakenly texted Powell "[y]a Myles Powell has a lateral meniscus tear."[3] *Id.* at ¶ 70. Powell alleges Testa later advised Willard of Powell's lateral meniscus tear. *Id.* at ¶ 74. Testa texted Powell the following day, on January 14, 2020, and said "[r]emember to take your medicine this morning." *Id.* at ¶ 79. At no point during the season did Seton Hall, Willard, or Testa suggest to Powell that he stop playing, receive additional or different treatment, or consult with an independent medical professional. *Id.* at ¶ 80. On or about March 13, 2020, after the season had ended due to the Covid-19 pandemic, Powell was sent to Dr. Anthony Festa, the head team physician for Seton Hall, to be examined. *Id.* at ¶¶ 84-86. Testa allegedly told Powell to not go to any other medical professional and personally took Powell to Dr. Festa where he performed an MRI on Powell's right knee. *Id.* at ¶¶ 87-89. Dr. Festa allegedly did not speak to Powell about his medical care. *Id.* at ¶ 90. Although Powell was allegedly not aware of the results of the MRI, the report attached by Defendants clearly

---

[2] The complaint alleges Testa sent this text on January 14, 2020; however, Plaintiff's exhibit of the text shows that it was sent on January 13, 2020. *See* Pl. Opp. Br., ECF No. 20, Ex. 1.

[3] While the Court accepts this allegation as required under FRCP 12(b), the Court notes that the alleged January 13, 2020 text was not included in the initial July 14, 2021 complaint or the August 17, 2021 first amended complaint.

indicates that the scan showed "[t]here is no medial or lateral meniscus tear."[4] Motion, Ex. D.

In April of 2020, Powell signed with the sports representation agency CAA, which directed Powell to consult with a pain management doctor, Dr. Johannes Roedel of Jefferson Hospital. SAC ¶¶ 92-94. On June 23, 2020, Dr. Roedel examined Powell and directed Powell to Dr. Matthew Pepe, the head orthopedic surgeon for the Philadelphia Eagles. *Id.* at ¶¶ 95-96. At some point, Dr. Pepe arranged an MRI scan of Powell's knee and both Dr. Roedel and Dr. Pepe opined that the MRI showed a clear tear to Powell's lateral meniscus. *Id.* at ¶¶ 97-98. Dr. Roedel and Dr. Pepe asked to review a copy of the March MRI arranged by Testa, who was allegedly uncooperative in providing the copy. *Id.* at ¶¶ 99-100. Powell, through a representative, eventually retrieved the copy of the MRI and provided it to Dr. Roedel and Dr. Pepe, who opined that the June 2020 image was similar to the March 2020 image and that the March 2020 MRI image clearly showed a tear to Powell's lateral meniscus, despite the report stating otherwise. *Id.* at ¶¶ 101-102; Motion, Ex. D. Powell alleges that the image of the tear in the March 2020 scan was so obvious it could not have been misdiagnosed. SAC ¶ 103. Though unclear when, Powell's father spoke with Willard who conceded that Defendants made a mistake in not properly disclosing and treating Powell's injury and suggested that Powell's family consult with an attorney. *Id.* at ¶ 107. Powell alleges that had his undiagnosed lateral meniscus tear in his right knee been properly diagnosed, it would have required sitting out the remainder of the basketball season to properly recover. *Id.* at ¶¶ 69, 81. Powell further alleges that, because of this undiagnosed injury which was "suspected or discovered" by professional basketball teams, he went from being "guaranteed" to be one of the first selections in the NBA Draft to going undrafted. *Id.* at ¶¶ 105-106.

### B.     Procedural History

Powell initiated this action on July 14, 2021 by filing a four-count complaint against Seton Hall, Willard, and Testa in the Superior Court of New Jersey, Law Division, Essex County asserting negligence and breach of fiduciary duty claims against all three Defendants, as well as a breach of contract claim against Seton Hall. *See generally* Complaint, Notice of Removal Ex. A., ECF No. 1. Defendants timely removed the action to this Court on the basis of its diversity jurisdiction. Following Defendants' motion to dismiss the initial complaint, Powell filed an amended complaint ("First Amended

---

[4] The Court will not accept as true the allegation that the March 2020 MRI scan clearly shows a tear. The Court looks outside of the pleadings and to Defendants' attachment of the March 2020 MRI report which clearly states that "[t]here is no medial or lateral meniscus tear." Since the March 2020 MRI is undisputedly authentic and explicitly relied on in the SAC, the Court is allowed to consider the document without converting the motion to dismiss into one for summary judgment. *See generally* Motion, Ex. D; *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d, 357, 368 n.9 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.") (Internal quotations omitted).

Complaint" or "FAC"). The FAC added Smith as a Plaintiff, Craig as a Defendant, and asserted a total of thirteen counts. *See* FAC, ECF No. 8. Defendants moved to dismiss the FAC on September 30, 2021, and the Court granted in part and denied in part Defendants' motion on April 26, 2022. *See* ECF Nos. 10, 14-15. Plaintiffs filed a SAC on May 24, 2022 asserting six counts, all of which allege gross negligence as to each of the Defendants (Counts 1, 2, and 3 by Powell against Testa, Willard, and Seton Hall, respectively; Counts 4, 5, and 6 by Smith against Craig, Testa, and Seton Hall; respectively). *See* ECF No. 16. Defendants have now moved to dismiss Counts 1, 2, and 3 in the SAC. *See* ECF No. 19.

## II.    LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") provides for the dismissal of a complaint if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The movant bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under FRCP 12(b)(6), "all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The Court need not accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a 12(b)(6) motion, the Court is ordinarily limited to the facts as alleged in the complaint, the exhibits attached thereto, and matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1996 (3d Cir. 1993). The Court may, however, look outside the pleadings and also consider "document[s] integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Asbestos Prod. Liability Litig. (No. VI)*, 822 F.3d 125, 134 n.7 (3d Cir. 2016).

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## III.   DISCUSSION

The central question with respect to each of Powell's three counts of gross negligence is whether the allegations in the SAC, assumed to be true, would satisfy the higher standard needed to state a claim of gross negligence or whether such allegations sound merely in simple negligence. As discussed before in this Court's previous opinion, ECF No. 14, if Powell's allegations sound in simple negligence, Defendants would be entitled to immunity with respect to these claims under the New Jersey Charitable Immunity Act, N.J.S.A. § 2A:53A-7(a) (the "NJCIA"). Here, as before, the parties do not

4

dispute that (1) Seton Hall is a nonprofit institution organized exclusively for educational purposes; (2) Willard and Testa are employees or agents of Seton Hall; (3) Powell was a student-athlete receiving an education from, and thus a beneficiary of, Seton Hall; and (4) Powell allegedly suffered his injuries in the pursuit of activities organized and sanctioned by Seton Hall in the performance of its educational or charitable activities. *See Powell v. Seton Hall Univ.*, Civil Action No. 2:21-cv-13709-WJM-JSA, 2022 U.S. Dist. LEXIS 75590, at *10-11 (D.N.J. Apr. 26, 2022).; N.J.S.A. § 2A:53A-7.

The essential elements to state a claim for negligence and gross negligence are identical: (1) the existence of a duty owed by Defendants towards Powell; (2) a breach of that duty by Defendants; (3) that Defendants' breach caused Plaintiffs' injuries; and (4) that Powell suffered damages as a result. *See Smith v. Kroesen*, 9 F. Supp. 3d 439, 442 (D.N.J. 2014). The difference between gross negligence and simple negligence is one of degree rather than of quality. *See id.* Where negligence is the failure to exercise ordinary or reasonable care that leads to a natural and probable injury, "gross negligence is the failure to exercise slight care or diligence." *Steinberg v. Sahara Sam's Oasis, LLC,* 142 A.3d 742 (2016) (quotations omitted). The New Jersey Supreme Court has clarified that under New Jersey Law, "gross negligence is an indifference to another by failing to exercise even scant care or by thoughtless disregard of the consequences that may follow from an act or omission." *Id.* at 364-65. While this standard requires "something more than inattention or mistaken judgment, it does not require willful or wanton misconduct or recklessness." *Id.* at 364.

Here, the Court finds that Powell has plausibly alleged a gross negligence claim against Defendants Testa, Willard, and Seton Hall. Powell has alleged enough facts that, if true, could plausibly demonstrate the failure to exercise the slightest care or diligence in the treatment of his injury. Powell alleges that (1) in mid-December of 2019 he began experiencing pain in his right knee, (2) upon reporting his knee pain, Testa physically examined him, (3) Defendants repeatedly advised Powell his injury was a bone bruise and that playing on it would not exacerbate it, (4) on January 6, 2020, Testa conducted another physical examination of Powell's knee whereby Powell could not complete the test due to his intense pain, (5) and while Powell continued to play with his injury, on January 13, 2020, Testa texted Powell "[y]a Myles Powell has a lateral meniscus tear." Powell also alleges that on March 13, 2020, after the season ended, Defendants directed him to undergo an MRI of his right knee. Powell did not receive or review the results of this MRI scan until he underwent another MRI scan on June 23, 2020 where doctors opined that he clearly had a lateral meniscus tear. Furthermore, though unclear when, Powell alleges that his father spoke with Willard who conceded that Defendants made a mistake in not properly disclosing and treating Powell's injury.

The Court is persuaded by the newly alleged text message sent by Testa on January 13, 2020, which, if true, shows that Defendants had knowledge of the extent of Powell's injury nearly 1 month after Powell began complaining about his knee and 2 months before the season ended. Although Defendants did conduct physical examinations of Powell and provided him with pain medication, the fact that they appeared to have known the true

extent of his injury in January of 2020 while continuing to recommend the same ineffective treatment and assuring Powell that his injury was simply a bone bruise, coupled with the other supporting facts discussed above, is sufficient to allege gross negligence. Questions remain as to what the Defendants did, or should have done, since allegedly having knowledge of Powell's injury in January.

The Court finds that Powell's claims are above a speculative level and are sufficiently detailed to state a plausible gross negligence claim against Testa, Willard, and Seton Hall. *See Sines v. Darling Ingredients Inc.,* Civ. No. 19-19121 (CCC), 2020 U.S. Dist. LEXIS 153856, at *14-15 (D.N.J. Aug. 25, 2020). Accordingly, Defendants' Motion to dismiss Counts 1-3 of the Second Amended Complaint is **DENIED**.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion to dismiss counts 1-3 in the Second Amended Complaint is **DENIED**. An appropriate order follows.

*/s/ William J. Martini*
**William J. Martini, U.S.D.J.**

**Date: November 14, 2022**