

**William J. O'Kane, Jr.**
*Certified by the Supreme Court of
New Jersey as a Civil Trial Attorney*
Member of NJ and PA Bars
wokane@archerlaw.com
856-354-3157 Direct

Archer & Greiner, P.C.
1025 Laurel Oak Road
Voorhees, NJ 08043
856-795-2121 Main
856-795-0574 Fax
www.archerlaw.com

January 24, 2025

<u>**VIA ECF**</u>

The Honorable William J. Martini, U.S.D.J.
U.S. District Court for the District of New Jersey
Martin Luther King Federal Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

      **Re:**   ***Powell, et al. v. Seton Hall University, et al.***
             <u>**Civil Action No. 2:21-cv-13709-WJM-JSA**</u>

Dear Judge Martini:

    We represent the Defendants Seton Hall University ("Seton Hall"), Deja Craig ("Craig"), and Anthony Testa ("Testa") (collectively, the "Seton Hall Defendants") in the above-referenced action. We write to respectfully request that the Court issue an order granting the Seton Hall Defendants leave to file a motion for summary judgment pursuant to *Fed.R.Civ.P.* 56 or schedule a pre-dispositive motion hearing conference at the Court's convenience, should the Court so desire.

    As the Court is aware, only Plaintiffs' gross negligence claims against the Seton Hall Defendants remain. The Court previously dismissed all other claims under the initial Complaint of Plaintiff Myles Powell ("Plaintiff Powell") and Plaintiff Jasmine Smith ("Plaintiff Smith") on the Seton Hall Defendants' Motion to Dismiss. [ECF8; Amended Complaint; ECF14; 15 Order and Opinion granting, in part, and denying, in part, Defendants' Motion to Dismiss].

    On May 24, 2022, Plaintiffs filed their Second Amended Complaint, alleging six total counts of gross negligence. Additionally, on May 24, 2022, Plaintiffs voluntarily stipulated to dismiss Kevin Willard from the Second Amended Complaint, dismissing Count II from the matter. Therefore, remaining in this case is Plaintiff Powell's claims of gross negligence against Testa (Count I) and Seton Hall (Count III) and Plaintiff Smith's claims of gross negligence against Craig (Count IV), Testa (Count V), and Seton Hall (Count VI). [ECF16].

    Under New Jersey law, gross negligence "refers to a person's conduct where an act or failure to act creates an unreasonable risk of harm to another because of the person's failure to exercise slight care or diligence." *Steinberg v. Sahara Sam's Oasis, LLC*, 226 N.J. 344, 364, 142 A.3d 742 (2016). The difference between negligence and gross negligence is one of degree – the

The Honorable William J. Martini, U.S.D.J.
January 24, 2025
Page 2

elements required of a plaintiff remain the same: duty, breach (as defined above), causation, and damages. *Id.* Here, the undisputed material facts demonstrate that, as a matter of law, Plaintiffs cannot establish any breach of care by the Seton Hall Defendants or medical causation.

**I.     Plaintiff Powell Is Unable to Demonstrate Seton Hall or Testa Breached Any Duty of Care.**

The undisputed material facts show that Seton Hall and Testa promptly referred Plaintiff Powell to an orthopedic surgeon, when there was a suspicion of a possible meniscus tear, and that Testa appropriately cared for Plaintiff Powell in his role as a trainer. This is supported by the record evidence, admissions of Plaintiff Powell, and expert testimony.

Specifically, in Counts I and III, Plaintiff Powell alleged that the Seton Hall Defendants' gross negligence was a failure to properly diagnose, care for, and inform him of his injury.[1] Specifically, Plaintiff Powell alleged that Testa injected his right knee on multiple occasions prior to basketball games during his senior year so that he could play. [*See* ECF16 at ¶57; 64; 65; 68]. In addition, Plaintiff Powell alleged that Seton Hall and Testa were aware of a lateral meniscus tear on January 13, 2020, based upon a text message of Seton Hall trainer, Testa, and continued to allow Plaintiff Powell to play basketball during his senior year, thereby constituting gross negligence. [ECF16 at ¶70; 80; 160].

Contrary to Plaintiff Powell's allegations set forth in the Counts I and III, Plaintiff Powell admitted during his deposition that no Seton Hall trainer, including Testa, ever injected him with any substance during his senior year of basketball. [Powell Dep. at pp. 154-155]. Plaintiffs' athletic trainer liability expert, Mr. Edgerton, likewise conceded that all "injections" that Plaintiff Powell received were performed by a non-party pain management doctor, Dr. Lipp, were properly documented in the Seton Hall medical chart, and were not injections into Plaintiff Powell's knee. [Edgerton Dep., pp. 50-51]. These "injections" were a local anesthetic, lidocaine, which was administered by Dr. Lipp following dry needling procedures on Myles Powell's quadricep. Simply put, Plaintiffs' Second Amended Complaint, Counts I and III, is based on false allegations of athletic trainers injecting Plaintiff Powell with pain medicine, which now both Plaintiff Powell and Plaintiffs' liability expert concede never occurred. Plaintiff's Second Amended Complaint also falsely alleged that Plaintiff Powell was not seen by Dr. Festa during the season.

Importantly, the deposition testimony of Plaintiffs' expert, Mr. Edgerton, does not support a gross negligence cause of action. In fact, Mr. Edgerton conceded that he has no criticism of the care and treatment rendered by the Seton Hall Defendants at all, only that their documentation of their care and treatment could have been "more robust," which does not equate to gross negligence. [Edgerton Dep. at p. 75]. Moreover, Mr. Edgerton testified that the suspicion of Plaintiff Powell's lateral meniscus tear lasted only between January 13 and January 14, 2020, when Plaintiff Powell was examined by an orthopedic surgeon, Dr. Festa. [Edgerton Dep. at p. 41]. Mr. Edgerton conceded that, when Plaintiff Powell reported changed conditions in his right knee, Seton Hall trainers promptly had him examined by an orthopedic surgeon. [Edgerton Dep. at pp. 24, 30-31]. Mr. Edgerton likewise conceded that, in New Jersey, an athletic trainer cannot make a diagnosis

---

[1] Notably, it is undisputed that Plaintiff Powell asserts no claims or allegations against Craig.

or order imagery studies for an athlete; as such, it is the doctor who diagnoses the athlete in New Jersey. [Edgerton Dep. at p. 20, 26; *N.J.A.C.* 13:35-10.7.] Finally, Mr. Edgerton conceded he has no criticism of the Seton Hall trainers for allowing Plaintiff Powell to participate in basketball during his senior year. [Edgerton Dep. at p. 76].

Therefore, Counts I and III, having no support in the undisputed record of material facts or law, fail to establish a breach as a matter of law and should be dismissed with prejudice.

## II.     Plaintiff Smith Is Unable to Demonstrate Any Breach by Seton Hall Defendants.

The undisputed material facts show that the Seton Hall Defendants promptly referred Plaintiff Smith to outside doctors for diagnosis, after an injury during practice on October 27, 2020. Plaintiff Smith unilaterally decided to stop the treatment offered by the Seton Hall Defendants, and the outside doctors who made the diagnoses informed her of such diagnoses. This is supported by the record evidence, admissions of Plaintiff Smith, and her own expert's testimony.

In Counts IV, V, and VI, Plaintiff Smith alleged that the Seton Hall Defendants were grossly negligent in failing to properly diagnose, care for, and inform her of her injury. Plaintiff Smith specifically alleges that the Seton Hall Defendants were grossly negligent to fail to inform her of the extent of her injury and allow her to play basketball during her senior year – the 2020-2021 season – after she injured her knee on October 27, 2020.

Notably absent from Plaintiff Smith's allegations in Counts IV, V, and VI are the facts that Plaintiff Smith was examined by a physician, Dr. Kelly, on the same day of the alleged injury, October 27, 2020, and further examined by an orthopedic surgeon, Anthony Festa, on October 30, 2020. [ECF16; ¶188; 190; 193; 195].

Diagnostic studies ordered by the outside physicians confirmed that she suffered neither a torn ACL nor a meniscus tear, and only a small chondral defect was present. [Edgerton Dep. at p. 64]. Dr. Festa's office notes clearly indicate that Plaintiff Smith was informed of the nature of this diagnosis and given treatment options by Dr. Festa. [Edgerton Dep. at pp. 63, 67-8].

Plaintiff Smith admitted that she voluntarily took herself out of therapy in November 2020 and returned to play without seeking further treatment for the remainder of the season. [Edgerton Dep. at p. 69]. According to Plaintiff Smith, she only specifically recalls complaining to a Seton Hall trainer of knee pain during the season on one occasion, which was following the Georgetown basketball game of February 8, 2020. [Edgerton Dep. at pp. 70-3]. Her treatment following this knee pain was ice and ibuprofen at Georgetown, and she does not remember having to continue to ice or take ibuprofen once the bus had returned to Seton Hall. [Edgerton Dep. at p. 73]. She has no other specific recollection of icing or taking ibuprofen for her knee. [*Id.*].

It is significant to note that the deposition of Plaintiff Smith's expert, Mr. Edgerton, does not support gross negligence claims against the Seton Hall Defendants. Indeed, Mr. Edgerton conceded that he has no criticism of the care and treatment rendered by the Seton Hall Defendants at all, only that their documentation of their care and treatment could have been "more robust," which is not gross negligence under the law. [Edgerton Dep. at p. 75]. Dr. Edgerton likewise

The Honorable William J. Martini, U.S.D.J.
January 24, 2025
Page 4

conceded that he has no criticism of the Seton Hall Defendants allowing Plaintiff Smith to participate in basketball during her senior year.  [Edgerton Dep. at p. 76].

In sum, the undisputed material facts demonstrate that non-party outside physicians were actively involved in both Plaintiff Powell's and Plaintiff Smith's care, which Plaintiffs' Second Amended Complaint ignores.  In New Jersey, gross negligence requires that the Plaintiffs show the absence of even slight care or diligence.  *See Steinberg v. Sahara Sam's Oasis, LLC,* 142 A.3d 742; 226 N.J. 344, 364-65, 142 A.3d 742 (2016).  Plaintiffs have never alleged that the doctors involved in their care during their senior seasons at Seton Hall were negligent or failed to comport with the standard of care.  As a matter of law, and as conceded by Plaintiffs' liability expert, Mr. Edgerton, the Seton Hall Defendants were not "grossly negligent" in referring Plaintiffs to doctors for diagnosis and treatment, or in allowing either Plaintiff to participate in basketball their senior years at Seton Hall.

## III.     Plaintiffs Cannot Demonstrate Any Medical Causation for Either Plaintiff's Alleged Injury.

In addition, Plaintiffs have offered no medical doctor as an expert to testify on issues of causation in this case.

Plaintiffs have presented no factual proof with respect to when Plaintiff Powell's meniscus injury allegedly occurred, the condition at the time of the injury, or whether that condition changed over time.  There is no expert medical doctor who can testify that Plaintiff Powell playing after whenever the meniscus injury allegedly occurred worsened his alleged injury.

Similarly, there is no medical expert to testify with respect to causation for Plaintiff Smith's alleged injury.  The records of Plaintiff Smith's treating doctor indicate that a subsequent MRI performed in June of 2021 showed the chondral defect to appear *the same* as it did in the MRI of October 28, 2020 – the day after the alleged injury.  As such, the record evidence actually indicates that the continued play during her senior year caused no change in her small chondral defect whatsoever.

In a complex injury and medical case such as this, proof of medical causation by an expert witness is essential as the relationship between the alleged initial injury and the alleged enhanced damage through continued play is beyond the ken of a lay juror.  *See Redland Soccer Club, Inc. v. Dept. of Army,* 55 F.3d 827 (3d Cir. 1995); *Feit v. Great W. Life & Annuity Ins. Co.,* 271 F.App'x 246, 252 (3d Cir. 2008) (expert testimony is generally required to prove causation of a medical condition).

The Honorable William J. Martini, U.S.D.J.
January 24, 2025
Page 5


       For the foregoing reasons, the Seton Hall Defendants respectfully request leave to file a motion for summary judgment.  We thank Your Honor for your courtesies.

                       Respectfully submitted,

                       */s/  William J. O'Kane, Jr.*

                       WILLIAM J. O'KANE, JR.

WJO/mlb

cc:    The Honorable Jessica S. Allen, U.S.M.J.
       Lanique A. Roberts, Esquire
       Alan C. Milstein, Esquire
       Jeffrey P. Resnick, Esquire